COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner, Frank,
           Humphreys, Clements, Felton and Kelsey
Argued at Richmond, Virginia


MICHAEL ANTHONY CARTER
                                                              OPINION BY
v.       Record No. 2563-02-2                        JUDGE JEAN HARRISON CLEMENTS
                                                             MARCH 30, 2004
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
James E. Kulp, Judge Designate

Rhonda Quagliana (St. John, Bowling & Lawrence, LLP, on brief),
for appellant.

Stephen R. McCullough, Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.


Michael Anthony Carter was convicted in a bench trial of assaulting a police officer, in

violation of Code § 18.2-57(C).  On appeal, he contends the evidence presented at trial was

insufficient to support his conviction because the Commonwealth did not prove he had the

present ability to inflict actual violence upon the officer.  On September 9, 2003, a divided panel

of this Court affirmed Carter's conviction, holding the evidence was sufficient to convict Carter of

assaulting a police officer because Carter's conduct "reasonably and unequivocally" indicated to

the officer that Carter had "an intention and the present ability to harm the officer."  Carter v.

Commonwealth, 41 Va. App. 448, 451, 585 S.E.2d 848, 851 (2003).  On October 14, 2003, we

granted Carter's petition for a rehearing en banc, stayed the mandate of the panel decision, and

reinstated the appeal.  Upon rehearing en banc, we affirm Carter's conviction.

I. BACKGROUND

"Under familiar principles of appellate review, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003). So viewed, the evidence presented to the trial court established that, on December 29, 1998, around 11:00 p.m., Officer B.N. O'Donnell of the City of Charlottesville Police Department observed a speeding car and, activating his vehicle's overhead flashing blue emergency lights, initiated a traffic stop. O'Donnell, who was on routine patrol at the time in a high crime area of the city, was driving a marked police vehicle and wearing his police uniform and badge. After the car pulled over, O'Donnell shone his vehicle's "take down" lights and spotlight onto the car and approached it on foot.

Two people were inside the car, the driver and Carter, who was seated in the front passenger seat. O'Donnell initiated a conversation with the driver, asking for his driver's license and registration and informing him why he had been stopped. The driver responded to O'Donnell in a "hostile" tone of voice. While conversing with the driver, O'Donnell used his flashlight to conduct a "plain view search" of the car to make sure there were no visible weapons or drugs in it. O'Donnell noticed that Carter had his right hand out of sight "down by his right leg." Carter then suddenly brought his right hand up and across his body. Extending the index finger on his right hand straight out and the thumb straight up, he pointed his index finger at the officer and said, "Pow." Thinking Carter "had a weapon and was going to shoot" him, O'Donnell "began to move backwards" and went for his weapon. A "split second" later, O'Donnell realized "it was only [Carter's] finger." O'Donnell testified: "The first thing I thought was that I was going to get shot. I – it's a terrifying experience, and if I could have gotten my weapon, I would have shot him." Immediately after the incident, O'Donnell, who was

- 2 -

"visibly shaken," asked Carter "if he thought it was funny," and Carter responded, "Yes, I think it is funny."

At the conclusion of the Commonwealth's evidence at trial and at the close of all the evidence, Carter moved to strike the evidence, arguing the Commonwealth's evidence was insufficient to prove assault because it failed to prove Carter had the present ability to inflict actual violence upon the officer. The Commonwealth responded that proof of such ability was unnecessary as long as the evidence proved the officer reasonably believed Carter had the present ability to inflict actual bodily harm upon him.

The trial court agreed with the Commonwealth. Finding Carter's "act of pointing what the officer believed at the time to be a weapon at him" did, "in fact, place Officer O'Donnell in reasonable apprehension or fear," the trial court found the evidence sufficient to prove beyond a reasonable doubt that Carter was guilty of assault. Thus, the trial court denied Carter's motion to strike the evidence and subsequently convicted him of assaulting a police officer, in violation of Code § 18.2-57(C). At sentencing, the court imposed a sentence of three years, suspending two years and six months.

This appeal followed.

## II. ANALYSIS

Code § 18.2-57(C) provides, in pertinent part, that "any person [who] commits an assault . . . against . . . a law-enforcement officer . . . engaged in the performance of his public duties as such . . . shall be guilty of a Class 6 felony."

On appeal, Carter asserts the Commonwealth failed to prove his conduct constituted an assault of a law-enforcement officer because, in pointing his finger at the officer and saying "pow," he did not have the present ability to inflict harm upon the officer, as required under the

- 3 -

common law definition of assault. Thus, he contends, the trial court erred, as a matter of law, in finding the evidence sufficient to sustain a conviction for assault.

In response, the Commonwealth contends that, under long-established Virginia case law, a defendant need not have had the present ability to inflict harm at the time of the offense to be guilty of assault. It is enough, the Commonwealth argues, that, as in this case, the defendant's conduct created in the mind of the victim a reasonable fear or apprehension of bodily harm. Accordingly, the Commonwealth concludes, the trial court properly found the evidence sufficient to convict Carter of assaulting a police officer.

In determining whether the trial court correctly ruled that Carter's conduct constituted an assault, we are faced with a mixed question of law and fact. We review the trial court's legal conclusions *de novo* while giving deference to the trial court's findings of fact unless the findings are "plainly wrong or without evidence to support them." Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 235-36 (1998). Moreover, as previously stated, we consider the evidence in the light most favorable to the Commonwealth. See Banks, 41 Va. App. at 543, 586 S.E.2d at 877.

While statutorily proscribed and regulated, see Code § 18.2-57, the offense of assault is defined by common law in Virginia. See Zimmerman v. Commonwealth, 266 Va. 384, 387, 585 S.E.2d 538, 539 (2003) ("In this jurisdiction, we adhere to the common law definition of assault, there having been no statutory change to the crime."). At common law, the term "assault" originally had two distinct meanings, one when used in the context of criminal law and another when used in the context of torts law. See Rollin M. Perkins, Perkins on Criminal Law 114 (2d ed. 1969). A criminal assault was "an attempt to commit a battery." Id. Under this definition of assault, it did not matter "whether the victim was put in fear or was even aware of the assault." Roger D. Groot, Criminal Offenses and Defenses in Virginia 48 (2004). It mattered only that the

- 4 -

accused had the specific intent and present ability to commit the battery and "performed some direct, ineffectual act towards its commission." Id.

Conversely, a tortious assault was an overt, intentional act that placed another in reasonable apprehension of immediate bodily harm. Perkins, *supra*. Under this definition, an assault was "an offer to batter" and did not require proof of an "actual, overt attempt to batter." Groot, *supra*. Instead, it required "proof of a threat, actual or implied, to batter and an apparent present ability to do so." Id. at 48-49 (footnote omitted). "Actual ability to carry out the threat [was] not required because this form of assault turn[ed] on the victim's apprehension of harm; apparent ability [was] sufficient to create apprehension." Id. at 49; see also Wayne R. LaFave, Criminal Law § 7.16, at 746 (3d ed. 2000) (observing that proof of a present ability to batter was "clearly unnecessary" for this type of assault). It did require, though, "some physical act which proffer[ed] imminent unwanted force." John L. Costello, Virginia Criminal Law and Procedure § 4.2 (3d ed. 2002) (emphasis omitted). Additionally, absent an intention to batter, there must have been "an actual intention to cause apprehension." LaFave, *supra*, § 7.16, at 747 (citing W. Page Keeton et al., Keeton & Prosser on the Law of Torts § 10 (5th ed. 1984)). "The apprehension must [have been] one which would normally be aroused in the mind of a reasonable person." Keeton, *supra*; see also LaFave, *supra* (noting that "conduct of the sort to arouse a reasonable apprehension of bodily harm" was required).

In time, however, the tort type of assault, putting the victim in reasonable apprehension of bodily harm, became recognized, "in addition to (not as an alternative to) the attempted-battery type of assault," as a criminal assault at common law. LaFave, *supra*, § 7.16, at 746 (emphasis omitted); see also Groot, *supra*, at 48; Perkins, *supra*, at 116. Indeed, Blackstone observed in his discussion regarding "private wrongs" that a tortious injury may be committed

> by threats and menaces of bodily hurt, *through fear of which a man's business is interrupted*. A menace alone, without a consequent inconvenience, makes not the injury, but to complete the wrong there must be both of them together. The remedy for this is in pecuniary damages, . . . this being inchoate, though not an absolute violence.

3 William Blackstone, Commentaries *120 (emphasis added). He then noted in his subsequent discussion regarding "public wrongs" as follows:

> I have nothing farther to add to what has already been observed [concerning assaults] in the preceding book of these commentaries; when we considered them as private wrongs. . . . But, taken in a public light, as a breach of the king's peace, an affront to his government, and a damage done to his subjects, they are also indictable and punishable with fine and imprisonment; or with other ignominious corporal penalties.

4 id. at *216-17.

In Commonwealth v. White, 110 Mass. 407 (1872), an early, leading case illustrative of the common law definition of assault, the defendant, who had pointed a purportedly unloaded gun at the frightened victim, asked the trial court to instruct the jury that, to be guilty of assault, he must have had an intention to do some bodily harm to the victim and the present ability to execute that intention. Id. at 407. Instead, the court instructed the jury that "an assault is any unlawful physical force partly or fully put in motion, which creates a reasonable apprehension of immediate physical injury." Id. In approving the instruction, the appellate court stated:

> It is not the secret intent of the assaulting party, nor the undisclosed fact of his ability or inability to commit a battery, that is material; but what his conduct and the attending circumstances denote at the time to the party assaulted. If to him they indicate an attack, he is justified in resorting to defensive action. The same rule applies to the proof necessary to sustain a criminal complaint for an assault. It is the outward demonstration that constitutes the mischief which is punished as a breach of the peace.

Id. at 409.

Assault has, thus, long been defined at common law "as being (1) an attempt to commit a battery or (2) an intentional placing of another in [reasonable] apprehension of receiving an immediate battery." Perkins, *supra*, at 114. Today, most jurisdictions include both of these separate types of assault, attempted battery and putting the victim in reasonable apprehension, within the scope of criminal assault. Perkins, *supra*, at 116-17; LaFave, *supra*, § 7.16, at 745.

In Virginia, our Supreme Court has long recognized the existence of both concepts of assault in the criminal-law context. In <u>Lynch v. Commonwealth</u>, 131 Va. 769, 109 S.E. 418 (1921), the Supreme Court, in clarifying its earlier reversal of an assault conviction in <u>Berkeley v. Commonwealth</u>, 88 Va. 1017, 14 S.E. 916 (1892), stated as follows:

> <u>Berkeley's Case</u>, 88 Va. 1017, 14 S.E. 916, . . . was a prosecution for an assault. It is true that the opinion of the court in that case quotes with approval extracts from Davis Cr. Law and Russell on Crimes, in which the statement is made that "to constitute an assault, there must be present ability to inflict an injury," yet, as indicated in the very extracts quoted, this statement is subject to the qualification that if the threatened conduct is such that it puts the person assailed in such apparent peril as to create in him the reasonable belief that he is in peril, the assault will be complete, although it may be that the person making the assault did not in truth have the present ability to inflict the threatened injury. As said in Bish. New Cr. Law (8th ed.), sec. 32, on the subject of what constitutes an assault: "There is no need for the party assailed to be put in actual peril, if only a well-founded apprehension is created. For his suffering is the same in the one case as in the other, and the breach of the public peace is the same. To illustrate: . . . If, within shooting distance, one menacingly points at another with a gun, apparently loaded, yet not in fact, he commits an assault the same as if it were loaded." Thereupon, Mr. Bishop proceeds to lay down what is undoubtedly the correct rule on the subject, in the following words: "There must be some power, actual or apparent, of doing bodily harm; but apparent power is sufficient. In the instance we are referring to, the person assaulted is really put in fear. . . . It has been said that the gun must be within shooting distance; but plainly if it is not, yet seems to be so to the person assaulted, or danger otherwise appears imminent, it will be sufficient."

> It appears from the opinion in <u>Berkeley's Case</u> that the [victim] himself testified that the accused "did not attempt to

- 7 -

strike" him. Hence, it affirmatively appeared that the [victim] was never put in any apparent peril or apprehension of bodily harm. And the court correctly held, under those circumstances, that the charge of the assault was not sustained by the evidence. Plainly, therefore, the case does not hold, as is claimed for the accused in the case before us, that, to constitute an attempt, the overt act must, in all cases, be accompanied with the present ability on the part of the actor to accomplish the actual thing attempted.

Lynch, 131 Va. at 774-75, 109 S.E. at 420.

In Burgess v. Commonwealth, 136 Va. 697, 118 S.E. 273 (1923), the Supreme Court was asked to review the propriety of a jury instruction defining assault in a case "where there [was] no battery, but the overt act done put[] the party assailed in well founded fear of bodily harm." Id. at 708, 118 S.E. at 276. In that case, the evidence proved (1) that the defendant fired his pistol intending to create the apprehension in the victim's mind that the shots were intended to strike him and (2) that the victim believed the defendant was shooting at him. Id. at 705-06, 118 S.E. at 275. Faced with the specific issue of whether, under the common law, the crime of assault included the put-in-apprehension type of tortious assault or was limited to the attempted-battery type of assault, the Court sustained the jury instruction, stating as follows:

The instruction under consideration, therefore, presents the question on which there is a sharp and irreconcilable conflict in the authorities on the subject; diametrically opposed positions being taken by the authorities, namely: (a) That it is sufficient to constitute an assault that the party assailed is put in well founded fear or apprehension of bodily harm, although the assailant has in fact no intention to strike the party assailed and the latter is not in fact put in actual peril; and (b), that (where there is no battery) the putting of the party assailed in actual peril is essential to constitute an assault upon him. And since in a criminal prosecution for assault the existence of a criminal intent on the part of the accused is essential to his guilt, as corollary to the opposing views of such respective lines of decision, such lines of decision respectively hold: (c) That to render one guilty of the offense of an assault, it is sufficient that the act done is with the intent to put the party assailed in fear or apprehension of bodily harm, and that by the act he is in fact put in well founded fear or apprehension of such harm; and, (d) that to render one thus guilty, it is essential that the act done must be with the intent to do bodily harm to the party

- 8 -

> assailed, and the latter (where there is no battery) must be put in actual peril of bodily harm.
>
> \*     \*     \*     \*     \*     \*     \*
>
>     . . . We think that, both in reason and in accordance with the great weight of modern authority, the positions (a) and (c), aforesaid, embody the correct doctrine on the subject.

Id. at 706-07, 118 S.E. at 275-76. In rejecting the notion that the victim must be put in actual peril and that the act must be done with the intent to do bodily harm to the victim, the Court quoted with approval these statements from 5 C.J. (5), 3, at 618:

> The better rule is that the defendant's intention [to do actual bodily harm] does not enter into the case, for if reasonable fear of bodily harm has been caused by the conduct of the defendant, this is an assault, even though he disclaims any intention to do wrong. . . . But even granting the necessity of some intent to injure, it has been held that the intended injury may be to the mind and feelings as well as to the body. . . . Apparent present ability [to do physical violence] . . . has been held to be sufficient; defendant need not be in striking distance or within arm's reach [of the party assailed].

Burgess, 136 Va. at 707-08, 118 S.E. at 276 (emphases omitted) (alterations in original).

Likewise, in Merritt v. Commonwealth, 164 Va. 653, 180 S.E. 395 (1935), the Supreme Court stated that, "'[i]n order to constitute an assault there must be an overt act or an attempt, *or the unequivocal appearance of an attempt*, with force and violence, to do physical injury to the person of another.'" Id. at 658, 180 S.E. at 397 (emphasis added) (quoting 2 R.C.L. 533). More recently, the Supreme Court stated in Commonwealth v. Vaughn, 263 Va. 31, 35, 557 S.E.2d 220, 222 (2002), that "the intent to put another in fear of bodily harm with a threat to use bodily force . . . is an assault."

It is clear, then, that, under Lynch, Burgess, Merritt, and Vaughn, a present ability to inflict bodily harm upon the victim is not an essential element of criminal assault in all cases. Indeed, under those cases, to be guilty of the tort type of criminal assault, a defendant need have only an apparent present ability to inflict harm.

Carter argues, however, that the phrase "coupled with a present ability" in the common law definition of assault in Harper v. Commonwealth, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955), means that one must, in all cases, have a present ability to inflict harm upon the victim to be guilty of assault. We disagree.

In Harper, the Supreme Court quoted the following passage from J.A.G. Davis, Criminal Law 353-54 (1838) (emphasis added):

> "An assault is an attempt or offer, with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution; as by striking at him with a stick or other weapon, or without a weapon, though he be not struck, or even by raising up the arm or a cane in a menacing manner, by throwing a bottle of glass with an intent to strike, by levelling a gun at another within a distance from which, supposing it to be loaded, the contents might injure, or any similar act accompanied with circumstances denoting an intention coupled *with a present ability*, of using actual violence against the person of another. But no words whatever, be they ever so provoking, can amount to an assault . . . ."

Harper, 196 Va. at 733, 85 S.E.2d at 255. In our view, this quote from Harper does not indicate that the Supreme Court was undertaking, in that case, to define the offense of assault in its entirety. Moreover, it is apparent from the context that this was not the Court's intention.

The relevant question to be decided in Harper was whether the trial court had erred in amending a jury instruction on self-defense requested by the defendant, who was convicted by the jury of assault and battery. Id. at 729, 85 S.E.2d at 253. After holding that the trial court did not err and stating the reasons for its decision, the Court stated, as an aside, that another instruction given at the defendant's request and not at issue in the case was "more favorable to him than a statement of the correct principles of self-defense would have been." Id. at 732, 85 S.E.2d at 255. That granted instruction, the Court added, was "erroneous" because it incorrectly

> told the jury in effect that if they believed that [the victim] with a knife in his hand "angrily" cursed the accused and acted in a

-10-

> threatening manner, the accused was justified in striking [him]
> with a deadly weapon. This is not the law. In order to justify an
> accused in striking another with a deadly weapon, as the accused
> admits he did in this case, a threatening attitude alon[e] affords no
> justification. The adversary must have made some overt act
> indicative of imminent danger to the accused at the time.

Id. at 733, 85 S.E.2d at 255. The same principle, the Court said, is expressed in the passage

quoted from Davis's treatise, upon which Carter relies in this case. Id.

It is clear, therefore, that the common law definition of assault set forth in Harper was not

intended to be an all-inclusive definition of assault in Virginia. Rather, it was intended solely to

support the proposition that, to justify the use of a deadly weapon in self-defense when assaulted

by another, there must have been an overt act by the other person that led the defendant to

reasonably believe he was in imminent danger of losing his life or suffering serious bodily

injury—words and a "threatening attitude" are not, by themselves, enough. In other words, it

must have reasonably appeared to the defendant that the other person had a present ability to

inflict serious bodily harm upon him.

We conclude, therefore, that the definition of assault contained in Harper did not, as

Carter would have us find, supersede or otherwise annul the common law definition of assault set

forth in Lynch and Burgess. Indeed, as used in Harper, the subject definition accords more with

the tort concept of criminal assault recognized in Lynch and Burgess than with the

attempted-battery concept, which does not require that the victim even be aware of the assault,

much less the defendant's present ability to inflict harm upon him. See also Perkins, *supra*, at

122 (noting that, in jurisdictions that have extended the scope of the crime of assault to include

the tort concept of assault, references in definitions of assault to "such circumstances as denote at

the time an intention, coupled with a present ability" allude to circumstances that are indicative

of either an actual or reasonably apparent present ability).

-11-

Moreover, as previously discussed, the two types of criminal assault recognized at common law—attempted assault and putting the victim in reasonable apprehension of bodily harm—are separate and distinct forms of the same offense. They have different elements and are, thus, defined differently and applied under different circumstances. Hence, the use of the common law definition of assault contained in Harper in a case requiring determination of whether an attempted-battery type of criminal assault occurred, see, e.g., Zimmerman, 266 Va. at 387, 585 S.E.2d at 539; Bennett v. Commonwealth, 35 Va. App. 442, 449, 546 S.E.2d 209, 212 (2001), does not, as Carter implicitly suggests, negate the applicability of the definition of assault contained in Lynch and Burgess in a case, like the instant one, involving solely a tort type of criminal assault. Such use, therefore, does not constitute a rejection of Lynch and  Burgess, which remain good law.

For theses reasons, we hold that, under the common law definition of assault, one need not, in cases such as this, have a present ability to inflict imminent bodily harm at the time of the alleged offense to be guilty of assault. It is enough that one's conduct created at the time of the alleged offense a reasonable apprehension of bodily harm in the mind of the victim. Thus, an apparent present ability to inflict imminent bodily harm is sufficient to support a conviction for assault.

In this case, the trial court found that Carter's "act of pointing what the officer believed at the time to be a weapon at him" did, "in fact, place Officer O'Donnell in reasonable apprehension or fear." The evidence in the record abundantly supports this finding, and the finding is not plainly wrong.

After pulling over a speeding vehicle at night, Officer O'Donnell approached the vehicle and asked to see the driver's license and registration. The driver responded in a "hostile" manner. Using his flashlight, O'Donnell conducted a "plain view search" of the car for visible

-12-

weapons and drugs.  O'Donnell saw that Carter had his right hand out of sight "down by his right leg."  Carter then suddenly brought his right hand, which he had fashioned in the form of a handgun, up and across his body, pointed it at the officer, and said, "Pow."  Thinking Carter "had a weapon and was going to shoot" him, O'Donnell "began to move backwards" and went for his weapon.  A "split second" later, O'Donnell realized "it was only [Carter's] finger."  O'Donnell testified that he thought he was "going to get shot."  It was, he said, "a terrifying experience, and if I could have gotten my weapon, I would have shot him."

The trial court could reasonably conclude from these facts that the officer was terrified and thought he was about to be shot.  That the officer's terror was brief does not alter the fact, as found by the trial court, that the officer believed for a moment that Carter had the intention and present ability to kill him.  Moreover, under the circumstances surrounding the incident, we cannot say, as a matter of law, that such a belief was unreasonable.  Thus, although Carter did not have a weapon, the trial court could properly conclude from the evidence presented that Carter had an apparent present ability to inflict imminent bodily harm and that his conduct placed Officer O'Donnell in reasonable apprehension of such harm.

Hence, the trial court did not err, as a matter of law, in finding the evidence sufficient to convict Carter of assault under the common law tort definition of assault that has long been recognized as a part of the definition of criminal assault in Virginia.  Accordingly, we affirm Carter's conviction for assault under Code § 18.2-57(C).

Affirmed.

Benton, J., with whom Fitzpatrick, C.J., joins, dissenting.

Whatever doubt may have existed about the definition of assault in Virginia should have been dispelled by the Supreme Court's recent decision in Zimmerman v. Commonwealth, 266 Va. 384, 585 S.E.2d 538 (2003). Affirming a conviction for assault on a law enforcement officer, the Court reaffirmed the longstanding definition of the crime of assault.

> In this jurisdiction, we adhere to the common law definition of assault, there having been no statutory change to the crime. In order to constitute an assault, there must be an attempt with force and violence, to do some bodily hurt to another, whether from wantonness or malice, *by means calculated to produce the end if carried into execution*; it is any act accompanied with circumstances denoting an intention, *coupled with a present ability*, to use actual violence against another person. Harper v. Commonwealth, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955). See Commonwealth v. Vaughn, 263 Va. 31, 35, 557 S.E.2d 220, 222 (2002) ("intent to put another in fear of bodily harm with a threat to use bodily force . . . is an assault").
>
> An assault requires an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do physical injury to the person of another. Merritt v. Commonwealth, 164 Va. 653, 658, 180 S.E. 395, 397 (1935). There is no requirement that a victim be physically touched to be assaulted. Harper, 196 Va. at 733, 85 S.E.2d at 255 (assault occurs "though [the victim] be not struck").

Zimmerman, 266 Va. at 387, 585 S.E.2d at 539 (emphasis added).[1]

This definition comports with the usual common law standard because "in the early law a criminal assault was an attempt to commit a battery and that only." Rollin M. Perkins, Criminal

---

[1] Consistent with the assault definition in Zimmerman, the full sentence extracted in the Vaughn citation in this quotation is as follows: "We have held that the intent to put another in fear of bodily harm with a threat to use bodily force, *such as brandishing a deadly weapon*, is an assault." 263 Va. at 35, 557 S.E.2d at 222 (emphasis added). Thus, Vaughn supports the proposition that "present ability" or "means calculated to produce the end if carried into execution" must be coupled with the requisite intent.

-14-

Law 159 (3d ed. 1982).[2] Consistent with this view, the common law of assault that the Court

reiterated in Zimmerman has long been defined in Virginia as follows:

> "An assault is an attempt or offer, with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution; as by striking at him with a stick or other weapon, or without a weapon, though he be not struck, or even by raising up the arm or a cane in a menacing manner, by throwing a bottle of glass with an intent to strike, by levelling a gun at another within a distance from which, supposing it to be loaded, the contents might injure, or any similar act accompanied with circumstances denoting an intention coupled *with a present ability*, of using actual violence against the person of another. But no words whatever, be they ever so provoking, can amount to an assault; ***". (Italics supplied).

Harper, 196 Va. at 733, 85 S.E.2d at 255 (citation omitted). See also Berkeley v.

Commonwealth, 88 Va. 1017, 1017-18, 14 S.E. 916, 916 (1892). Thus, I do not agree with the

majority opinion's thesis that the common law of criminal assault, as applied in Virginia,

excludes the requirement that the Commonwealth prove the accused acted "by means calculated

to produce the end if carried into execution" or prove the accused's intention was "coupled with

a present ability . . . to use actual violence." Zimmerman, 266 Va. at 387, 585 S.E.2d at 539.

The majority opinion cites Lynch v. Commonwealth, 131 Va. 769, 109 S.E. 418 (1921),

as authority for the proposition that Virginia law recognizes a tort law definition of assault as an

---

[2] 3 William Blackstone, Commentaries *120, describes "assault" as follows:

> By *assault*; which is an attempt or offer to beat another, without touching him: or as if one lifts up his cane, or his fist, in a threatening manner at another; or strikes at him but misses him; this is an assault, *insultus*, which Finch describes to be an "unlawful setting upon one's person." This also is an inchoate violence, amounting considerably higher than bare threats; and therefore, though no actual suffering is proved, yet the party injured may have redress by action of *trespass vi et armis*; wherein he shall recover damages as a compensation for the injury.

-15-

alternative, separate type of assault under the criminal law. A cursory review of Lynch demonstrates, however, that the case involves an appeal of a conviction for "offering ardent spirits for sale," id. at 771, 109 S.E. at 419, and that "[t]he sole question presented . . . for decision . . . is . . . [whether] the ability, at the time an offer to sell ardent spirits is made, to complete the sale in accordance with the offer, [is] an essential element of the statutory offense of offering ardent spirits for sale." Id. Deciding that question, the Supreme Court held that the statute at issue did not render "[t]he actual lack of such ability . . . any ground of defense to the person making the offer," id., and that the statute proscribed a verbal proposal, without the need to prove more. Id. at 773, 109 S.E. at 419. The Court also noted that the statute did not apply to an offer that was a joke, id. at 772, 109 S.E. at 419. Thus, while the discussion about assault in Lynch is an interesting one, it is clearly *dicta*.

The majority opinion also cites Burgess v. Commonwealth, 136 Va. 697, 118 S.E. 273 (1923), for the same proposition. The issue in Burgess, however, was revealed by the Supreme Court to be the following:

> Was instruction No. 1 erroneous, in that it told the jury, in substance, that if they believed from the evidence that the accused, "before the officer was out of shooting distance," shot "in such manner and under such circumstances as would naturally lead the officer to believe that the pistol was being shot at him and with intent to terrify the officer, they should find him guilty of simple assault, notwithstanding the accused had no intention to strike him."

136 Va. at 705, 118 S.E. at 275. Thus, Burgess presented no occasion to discuss the requirement of "present ability" because its existence was not contested and the question as presented by the Court established the existence of present ability. The Court discussed and resolved the issue whether the jury was permitted to find that the act was committed under circumstances denoting the requisite intent of causing apprehension. Id. at 708, 118 S.E. at 276.

Similarly, Vaughn does not support the majority opinion's thesis. In that case, the accused, who shot a person and was convicted of malicious wounding, complained that the jury should have been given an instruction on the lesser offense of assault and battery. 263 Va. at 33, 557 S.E.2d at 221. Obviously, in view of the gunshot wound, Vaughn presented no issue concerning the existence of "present ability" or the need to prove that circumstance; it tacitly recognized that "'[t]he threat to use deadly force by brandishing a deadly weapon has long been considered an assault.'" 263 Va. at 35, 557 S.E.2d at 222 (quoting Commonwealth v. Alexander, 260 Va. 238, 241, 531 S.E.2d 567, 568 (2000)). The discussion in Vaughn regarding assault concerned only the disputed issue of intent and led to the Court's holding that "[a] finding of assault and battery by the jury in these circumstances would require denying the uncontroverted physical evidence and accepting Vaughn's failure to explain what occurred as affirmative evidence of lesser intent." 263 Va. at 36, 557 S.E.2d at 223.

A review of Merritt v. Commonwealth, 164 Va. 653, 180 S.E. 395 (1935), which the majority also relies upon, reveals that the Court did not adopt a definition of assault for criminal prosecutions that excludes the requirement to find "present ability" or "means calculated to produce the end." Noting that the indictment in Merritt "charged the accused with the commission of a crime by maliciously pointing a loaded gun at [a man], who was in shooting range," 164 Va. at 656, 180 S.E. at 397, the Court held that the indictment charged "an assault." In reaching that holding, the Court recited the usual definition of assault that incorporated the element of "present ability." Id. at 658-59, 180 S.E. at 398. Indeed, when the Supreme Court reiterated this long standing definition in Zimmerman, it cited Merritt together with Harper and Vaughn as precedent. See Zimmerman, 266 Va. at 387, 585 S.E.2d at 539.

In the present case, the issue concerns whether the pointing of a finger while uttering the word "pow" is an act performed either "by means calculated to produce the end if carried into

execution" or "with a present ability . . . to use actual violence," which is a circumstance that must accompany the intention of the accused. Zimmerman, 266 Va. at 387, 585 S.E.2d at 539. The police officer testified that the following occurred when he approached a car to issue a summons to the driver for speeding:

> [W]hen I first got to the vehicle and I initiated the conversation and was looking around, I noticed that the passenger[, Carter,] had his right hand down by his right leg. As I spoke with the driver, it was a sudden movement. [Carter's] arm came up. It arced up and across his body, like this . . . .
>
> He said, "Pow." And that was -- I believed it to be a firearm. I believed he had a weapon and was going to shoot me at that point, until he said, "Pow," and then I realized that it was only his finger . . . .
>
> The first thing I thought was that I was going to get shot. I -- it's a terrifying experience, and if I could have gotten my weapon, I would have shot him. But it's -- it happens . . . [in] a split second.

The officer testified that Carter then "started laughing."

The common law definition of "assault" as contained in Zimmerman does not encompass this type of intentional conduct, which is intended to startle but is performed without a present ability to produce the end if carried out. Because of the definitional limitations of this common law rule, other states have addressed this type of conduct by statutory enactments. "[M]ost modern codes either include physical menacing in the crime of assault or else create a separate crime of 'menacing' or 'threatening' covering such conduct." Wayne R. LaFave, Criminal Law § 16.3(b), at 825 n.21 (4th ed. 2003). When legislatures statutorily define a crime in this manner "[f]or this type of assault, a present ability to inflict injury is clearly unnecessary." Id. at 825. See, e.g., Williamson v. United States, 445 A.2d 975, 978 (D.C. App. 1982) (holding that by statute an assault is established by proving "a menacing threat, which may or may not be accompanied by a specific intent to injure"); Bacon v. Bacon, 567 N.W.2d 414, 418 (Iowa 1997)

-18-

(holding that by statute the offender need only "have the apparent ability to execute the act constituting the assault" and that "[t]he ability . . . must be apparent to the offender, not the victim"); Barrios v. State, 702 A.2d 961, 970 (Md. App. 1997) (noting that by statute Maryland provides for alternative forms of assault, one of which is "an assault of the intentional frightening variety . . . [that only] require[s] in terms of perception . . . an apparent present ability from the viewpoint of the threatened victim"); State v. Riley, 442 A.2d 1297, 1298 (Vt. 1982) (noting that Vermont's assault statute, which is patterned on the Model Penal Code, "was intended to incorporate into the criminal law the civil notion of assault" and to permit prosecution "against a person who places another in fear of bodily injury, even if the alleged assailant acts without purpose to carry out the threat").

For these reasons, I disagree with the majority opinion's holding that a conviction for criminal assault can be sustained in Virginia even though the evidence failed to prove the accused had a present ability to harm the officer. I would hold that Carter committed an "act accompanied with circumstances denoting an intention" to menace but it was not "coupled with a present ability . . . to use actual violence" or "calculated to produce the end if carried into execution." Zimmerman, 266 Va. at 387, 585 S.E.2d at 539. See, e.g., People v. Marceaux, 83 Cal. Rptr. 798, 803 (Cal. App. 1970) (holding that "an assault conviction cannot be predicated upon an intent only to frighten"); People v. Vaiza, 52 Cal. Rptr. 733, 735 (Cal. App. 1966) (holding that "[i]f a person threatens to shoot another with . . . a chocolate candy pistol, there is no ability to commit . . . any injury with it on the person of another"); Johnson v. State, 280 S.E.2d 856, 857 (Ga. App. 1981) (holding that the evidence failed to establish "the present ability to inflict a violent injury" where the evidence proved the accused shook his finger while making a threat at persons in a car).

Because Virginia continues to be guided by the common law rule concerning assault, I would hold that the conviction is not supported because the evidence failed to prove Carter acted "by means calculated to produce the end if carried into execution." <u>Zimmerman</u>, 266 Va. at 387, 585 S.E.2d at 539. Accordingly, I would reverse the conviction for assault.