HUMPHREYS, J.,
with whom PETTY and POWELL, JJ., join, dissenting.
I respectfully disagree with the majority that the evidence was sufficient to convict Clark of assault under Code § 18.2- *136 57. In my view, the evidence was insufficient as a matter of law to show that Clark committed an overt act as required for the common law offense of assault. Therefore, I dissent from the analysis and judgment in this case.
My disagreement with the majority centers around the fundamental rule that “[wjords alone [ ] do not constitute an assault.” Bennett v. Commonwealth, 35 Va.App. 442, 449, 546 S.E.2d 209, 212 (2001). Although the majority pays lip service to that rule, I believe that its analysis effectively circumvents it and for all practical purposes, finds that words alone can now constitute the crime of assault, so long as those words cause a “reasonable fear or apprehension” or interrupt a person’s “business.” Indeed, the example given by the majority from the Restatement of Torts clearly suggests that words alone can constitute the tort of assault if they are threatening in nature and uttered on multiple occasions. The majority now makes it a crime as well.
As the majority notes, our Supreme Court has recognized the merger of “the crime and tort of common law assault.” Carter v. Commonwealth, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005). In Carter, the Supreme Court explained the two separate types of assault:
[Cjommon law assault, whether a crime or tort, occurs when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm or engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim.
Id. (emphasis in original). Although the other elements are different, both definitions of assault require that the assailant commit an overt act.
Under the tort definition of assault, the overt act must be one that is “intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person’s mind a reasonable apprehension of an imminent battery.” Koffman v. Garnett, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003) (citing Restatement *137 (Second) of Torts § 21 (1965); Charles E. Friend, Personal Injury Law in Virginia § 6.3.1, at 226 (2d ed.1998); Fowler V. Harper, et al., The Law of Torts § 3.5, at 3:18-:19 (3d ed. Cum.Supp.2003)) (emphasis added). Traditionally, overt acts include
“an attempt or offer, with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution; as by striking at him with a stick or other weapon, or without a weapon, though he be not struck, or even by raising up the arm or a cane in a menacing manner, by throwing a bottle of glass with an intent to strike, by leveling [sic] a gun at another within a distance from which, supposing it to be loaded, the contents might injure, or any similar act.”
Harper v. Commonwealth, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955) (quoting J.A.G. Davis, Criminal Law 353-54 (1838)). Although it would be impossible to itemize all of the possible actions that can constitute an overt act in the context of an assault, the common law has continuously recognized one action that definitively will not support an assault: the speaking of words. “[W]ords and a ‘threatening attitude’ are not, by themselves, enough” to constitute an overt act. Carter v. Commonwealth, 42 Va.App. 681, 694, 594 S.E.2d 284, 291 (2004) (en banc), aff'd, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005) .
If words are not enough to constitute an overt act, it would seem to follow that the act of approaching within earshot of the purported victim, or waiting for the purported victim to approach within earshot, in order to make the threatening words heard is equally insufficient to constitute an overt act. To hold otherwise, as the majority implicitly does, would render meaningless the principle that words, even when coupled with a threatening attitude, are insufficient to constitute an assault. Yet that is all the evidence established in this case. On the morning of the incident, Clark parked her car in a driveway that was empty at the time, although it was reserved for school buses. Some time after that, while Clark *138 was standing with her child outside of the locked school, Coleman pulled up in her bus and parked behind Clark’s car. When Coleman arrived, Clark’s car was not blocking the entire bus circle. Another bus driver specifically testified that the buses “could get around” Clark’s car.[6] When Coleman opened the door to her bus, Clark approached her. Coleman testified, and the trial court confirmed, that Clark never approached closer than ten feet from the bus. Later that same day, Clark approached the bus again. Clark repeated her threats to Coleman and, again, did not come closer than ten feet.
The majority finds evidence sufficient to constitute an overt act for the crime of assault from the fact that Clark’s car “blocked” Coleman’s bus and that Clark waited for Coleman in a place Clark knew she would be in order to threaten her when she arrived.[7] However, there is no evidence that Clark parked her car with the specific intent to create fear and apprehension of bodily harm by blocking Coleman’s bus. For an assault to occur, the overt act must be done with the specific intent to “cause either harmful or offensive contact with another person or apprehension of such contact.” Koffman, 265 Va. at 16, 574 S.E.2d at 261. There is no evidence in the record before us that by parking her car in the bus circle *139 or by waiting for Coleman’s bus to arrive, Clark intended to cause apprehension of imminent bodily harm to Coleman.[8]
In addition, the majority ignores the fact that the record is devoid of any evidence whatsoever that Clark’s actions, as opposed to her words, placed Coleman “in fear or apprehension of bodily harm,” an element that is required to be proved to satisfy the tort definition of assault. Carter, 269 Va. at 47, 606 S.E.2d at 841. Coleman never testified that Clark’s conduct caused such a state of mind. In fact, the Commonwealth presented no evidence whatsoever that Coleman ever feared or apprehended imminent bodily harm as a result of either confrontation with Clark. The Commonwealth could have simply asked Coleman about the effect of Clark’s actions on her state of mind but failed to do so. Thus, the evidence proved only that Clark parked her car in a place that she knew Coleman would be and that she positioned herself in sufficient proximity to Coleman to convey her diatribe that Clark would “get her” or “f* * * [her], up.” While the fact finder is certainly permitted to draw reasonable inferences from the evidence presented, any such inference must inevitably flow from the evidence actually presented and not from sheer speculation. See, e.g., Commonwealth v. Barker, 275 Va. 529, 540, 659 S.E.2d 502, 507 (2008) (“evidence proving a causal connection must be ‘sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference’ ” (quoting Cohn v. Knowledge Connections, Inc., 266 Va. 362, 369, 585 S.E.2d 578, 582 (2003) (other citations omitted))). Regardless of whether Coleman was actually afraid, there is no testimony or other evidence that Clark’s actions placed Coleman in fear or apprehension of imminent bodily harm. In the absence of such evidence, any *140 conclusion that Clark’s actions caused Coleman to apprehend imminent bodily harm from Clark cannot be the result of a reasonable inference, but rather must be the result of speculation. In affirming Clark’s conviction, the majority has either engaged in such speculation or now implicitly holds that Clark’s words were sufficient as a matter of law to constitute an assault.[9]
Indeed, our decision in Bennett is a clear example of the principle that merely approaching someone for the purpose of threatening them is not an overt act. In that case, Bennett confronted two deputies. He “approached the deputies, from approximately twenty feet away, until he was standing within inches of the two deputies.” Id. at 446, 546 S.E.2d at 211. Bennett stood there “shouting profanities and stating that ‘if [the deputies] didn’t leave, it would be an “F” ing blood bath.’ ” Id. at 446—47, 546 S.E.2d at 211. Bennett “gestured ■with his hands while speaking to the deputies, [but] he never raised his hands to them or physically threatened them.” Id. The deputies later testified that they felt “concerned” and “threatened.” Id. This Court reversed Bennett’s conviction for assault, holding that he had not committed an overt act. The Court reasoned that “[although Bennett stood within inches of the officers, he made no overt act or attempt to physically harm either officer” and he “was not armed and made no threatening gestures with his hands.” Id. at 449, 546 S.E.2d at 212. If approaching to within inches of someone and loudly proclaiming an imminent blood bath is not an overt act, there is no logical reason for concluding that an expansion of the distance from inches to feet for the purpose of shouting threats should change that result.[10]
*141 Moreover, the majority claims that Clark committed an assault “ ‘by threats and menaces of bodily hurt, through fear of which [Coleman’s] business [was] interrupted.’ ” Carter, 42 Va.App. at 687, 594 S.E.2d at 288 (quoting 3 William Blackstone, Commentaries *120). However, it is unclear from the majority’s opinion why it is relevant that Clark interrupted Coleman’s work. The only issue in this appeal is whether Clark’s actions constituted an overt act sufficient to create the state of mind sufficient to constitute an assault. Even under Blackstone’s description, the “threat or menace” and the interruption of one’s business are separate elements. “[T]o complete the wrong there must be both of them together.” Blackstone, supra at *120. The element at issue here is whether Clark’s actions constituted a threat or menace sufficient to constitute an assault. In Virginia, we require that such threats and menaces be accompanied by an overt act. Whether the purported assailant interfered with the victim’s business is only relevant if the assailant did so by committing an overt act.
While Clark’s conduct is reprehensible and worthy of condemnation and perhaps prosecution under a more appropriate statute,[11]1 conclude that it is insufficient as a matter of law to constitute a common law assault. Clark did nothing more than wait for Coleman to arrive at the school and stand *142 outside her bus and shout epithets and threats. That Clark did so twice on the same day or that by doing so she interfered with Coleman’s business does not transform those threats into an overt act sufficient to sustain a conviction for assault.
For these reasons, I would reverse the conviction, vacate the judgment below, and dismiss the warrant.

. Although Coleman’s bus may have been blocked in once she parked behind Clark's car and the other buses then in turn parked behind Coleman, Clark's actions alone did not cause Coleman to be blocked in. At trial, the Commonwealth called another bus driver as a witness and asked her: "Was there any way based on where [Clark’s car] was that buses could come and go?” The bus driver answered, "You could get around her, yes sir.”

. It is unclear from the majority’s opinion whether it holds that the purported assault occurred during Clark's confrontation with Coleman in the morning or the confrontation in the afternoon. Assault is not a continuing offense, and I am unaware of any precedent that would allow us to consider Clark's actions during the two separate incidents as one single assault as the majority does. If Clark’s conduct constitutes an assault, she either committed two assaults, one in the morning and one in the afternoon, or she committed one assault either in the morning or the afternoon. However, I see no basis for holding, as the majority does, that Clark committed one assault that spanned two separate incidents.

. Indeed, the examples of the type of conduct that historically constitute an overt act under either the criminal or tort definition of assault, such as those noted by our Supreme Court in Harper, have in common the fact that the action itself is unambiguously threatening of imminent bodily harm such as raising a fist, displaying a gun or other weapon, attempting to strike a blow, or hurling a missile. Parking a car, even if the result is to block an exit, carries no similar unambiguous threat of imminent harm.

. It is not difficult to imagine the sort of absurd results the majority's analysis could lead to. For example, after today, an inebriated bar patron who plants himself in the doorway and proudly announces that he will "whip every man in the place” will now have committed multiple assaults theoretically equal to the number of occupied bar stools, irrespective of whether any fist is actually raised. It seems to me that over the almost eight centuries of the evolution of the British common law, such a scenario has not previously been envisioned in any English, Irish, Welsh or Scottish pub, much less their courts.

. The majority contends that Bennett is distinguishable because, in that case, "we made no clear distinction between the criminal and tort law definitions of assault," and “used language tracking the criminal definition.” However, given that both definitions of assault require an overt act designed to create a particular state of mind, I believe that Bennett is illustrative nonetheless. It is a clear example that merely approaching someone for the purpose of threatening them, without some additional action, cannot be an overt act sufficient for common law assault.

. In fact, her actions were likely and more appropriately punishable by law under Code § 18.2-60, which makes it a crime to "communicate[ ] a threat ... to kill or do bodily harm, [ ] on the grounds or premises of any elementary, middle or secondary school property,” but the Commonwealth elected not to charge under this more specific statute.