UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Russell and Malveaux
Argued at Richmond, Virginia


DEBORA KAY MOORE

                                        MEMORANDUM OPINION* BY
v.        Record No. 0721-17-2          JUDGE MARY BENNETT MALVEAUX
                                        MAY 1, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
B. Elliott Bondurant, Judge

Norman A. Thomas (T. Scott Renick; Norman A. Thomas, PLLC, on
brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Debora Kay Moore ("appellant") appeals her convictions for two counts of assault of a

law enforcement officer, in violation of Code § 18.2-57(C).[1] She argues the trial court erred in

denying her motion to strike and convicting her because her overt acts were insufficient to

establish the elements of assault. Appellant also contends the trial court erred in denying her

motion to strike and convicting her of the second count of assault, because her actions were not

directed at the specified officer. For the following reasons, we affirm the judgment of the trial

court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also was convicted of intentional damage to property, in violation of Code
§ 18.2-137, and public swearing and intoxication, in violation of Code § 18.2-388. Those
convictions are not before this Court in this appeal.

# I. BACKGROUND

"Under familiar principles of appellate review, we will state 'the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court, and will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence.'" Sidney v. Commonwealth, 280 Va. 517, 520, 702 S.E.2d 124, 126 (2010) (quoting Murphy v. Commonwealth, 264 Va. 568, 570, 570 S.E.2d 836, 837 (2002)).

Deputies Kevin Greene and M.P. Boyle of the King William County Sheriff's Office were on duty on the morning of February 7, 2016. They were dispatched to search for a possibly intoxicated driver heading south on Route 30 in a certain car. At about 2:50 a.m., the deputies saw that car in a parking lot by the highway. Appellant was alone in the vehicle with the engine running.

When the deputies approached appellant, Greene noticed vomit on the car's exterior and appellant's shirt. Appellant's eyes were glassy and red, and her speech was slurred. Greene detected "an odor of alcoholic beverage" coming from inside the car, and saw an open beer bottle in the center console. Appellant told Greene she had consumed wine and beer that evening and that her brother was coming to pick her up. Greene testified at appellant's trial that he was not conducting a DUI investigation at that point. Instead, he and Boyle were simply "checking [appellant's] welfare" and trying to ensure that someone would come to get her.

Appellant's initial encounter with the deputies was relaxed. However, the situation escalated and she became aggravated when the deputies asked her how long it would take for her brother to arrive. Greene stated that although appellant was at times polite, she also became very upset and directed curses and racial slurs at him. Appellant also threatened to punch Greene in the face.

After approximately half an hour, appellant told Greene she had not contacted her brother. Following further discussion about who might be able to come and pick her up, appellant got out of her car. She was unsteady, dropped her phone in vomit, and had the odor of alcohol on her breath. Appellant yelled and cursed at Greene until he advised her that she would be arrested for being drunk in public if she did not arrange for someone to come and pick her up. The deputies waited for a few minutes, and when appellant did not contact anyone, Greene "put [his] hands on" her to take her into custody. Appellant broke away, but Boyle and Greene restrained her and placed her in their patrol car. While they secured appellant's car, they could hear her yelling and cursing and see the patrol vehicle rocking from appellant's kicks.

Boyle and Greene drove appellant to the sheriff's office and placed her in a room to appear before a magistrate via teleconference. Greene stated that appellant was "very uncooperative, kicking . . . [and] head[-]butting the door." The deputies asked two dispatchers to observe appellant because she claimed she was being assaulted whenever they tried to control her behavior. When appellant cursed the magistrate, the magistrate asked that appellant be removed from the proceedings.

As the deputies escorted appellant from the room, she continued using obscenities. Greene testified that as they approached the door to a holding area, Boyle was directly behind appellant. Greene was "directly next" to him, on Boyle's right. At that point, appellant "turned her head over her right shoulder . . . and . . . spit. . . . She made a gesture as if she was spitting." Greene described it as a "motion" similar to sticking out one's tongue, accompanied by a spitting sound. The deputy checked both his uniform and a nearby wall, but did not see any spittle and did not feel any on his skin.

Boyle testified that appellant "turned around and spat towards myself and Deputy Greene . . . . very forceful[ly]." He did not observe any spittle, but described "a very forceful blow of air

- 3 -

right . . . between us." Boyle stated that he and Greene were no more than a foot apart at that time. He further characterized appellant's conduct as "that gesture of spitting," like "hock[ing] a loogie," and stated that the behavior was neither a sneeze nor a "clearing of the throat." Although Boyle was not fearful that appellant, who was handcuffed, would hurt him with her arms, he was afraid that she would try to spit on him again.

Karen Strong, a dispatcher, also witnessed appellant's conduct. As the deputies escorted appellant to the holding area, Strong followed less than a foot behind Boyle. She testified that she saw appellant turn her head, although she could not see appellant's face because Boyle is taller than Strong and stood between her and appellant. Strong "heard spitting towards the right shoulder of Deputy Boyle," which was "like a spit between the teeth type of spit sound. . . . It sounded exactly like spitting." Strong did not see any spittle issue from appellant's mouth or land anywhere.

Appellant moved to strike the evidence, and the trial court denied the motion. Appellant then testified and denied that the events occurred as described by Boyle and Greene. She denied telling Greene she had consumed alcohol that evening, and stated that she "suppose[d]" Greene had "made . . . up" his testimony. She denied using racial slurs and did not recall telling Greene she wanted to punch him in the face. Appellant did not remember kicking the door at the sheriff's office or appearing before and cursing the magistrate. She also denied that anything unusual happened while she was being taken to the holding area, and repeatedly denied trying to spit at the deputies.

Appellant renewed her motion to strike. The trial court denied the motion, stating that "an overt act was committed. It was witnessed by not one, not two, but three people . . . [who] testified they distinctly saw [appellant] turn, they saw her mouth movements, . . . and they heard as if she was spitting."

- 4 -

The trial court found that the Commonwealth's witnesses were credible and more believable than appellant, whose memory was "very selective." After convicting appellant of other charges, the court took the assault charges under advisement until appellant's sentencing hearing. At the hearing, the court found that appellant "made the gesture[ of spitting], that's what assault is." The court convicted appellant of two counts of assault of a law enforcement officer, in violation of Code § 18.2-57(C). This appeal followed.

## II. ANALYSIS

Appellant argues the trial court erred in denying her motion to strike and convicting her of assault, because her overt acts were insufficient to establish the elements of that offense. She further argues that with respect to the second assault charge, the trial court erred in denying her motion to strike and convicting her because she did not direct her actions at Deputy Boyle. We address these arguments in turn.

When considering a challenge to the sufficiency of evidence on appeal, "we review the evidence in the light most favorable to the Commonwealth," the prevailing party at trial, "granting to it all reasonable inferences fairly deducible therefrom." Sierra v. Commonwealth, 59 Va. App. 770, 774, 722 S.E.2d 656, 657 (2012) (quoting Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997)). In conducting our inquiry, "the relevant question is, after reviewing the evidence in the light most favorable to the [Commonwealth], whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Kelly v. Commonwealth, 41 Va. App. 250, 257-58, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We do not "substitute our

judgment for that of the trier of fact," <u>Wactor v. Commonwealth</u>, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002), and "presume the judgment of the trial court to be correct," <u>White v. Commonwealth</u>, 68 Va. App. 111, 118, 804 S.E.2d 317, 320 (2017) (quoting <u>Kelly</u>, 41 Va. App. at 257, 584 S.E.2d at 447). Thus, we "will reverse only where the trial court's decision is 'plainly wrong or without evidence to support it.'" <u>Calloway v. Commonwealth</u>, 62 Va. App. 253, 261, 746 S.E.2d 72, 76 (2013) (quoting <u>Seaton v. Commonwealth</u>, 42 Va. App. 739, 746, 595 S.E.2d 9, 12 (2004)).

### A. <u>Appellant's Overt Acts and Sufficiency of the Evidence of Assault</u>

Appellant first argues that her "*de minimis* overt acts" did not rise to the level required to establish the elements of assault. Relying in part on <u>Merritt v. Commonwealth</u>, 164 Va. 653, 180 S.E. 395 (1935), she contends that while the nature of an assaultive act may vary, it "must be of sufficient gravity to invade another's personal security and create, at a minimum," a reasonable fear or apprehension of bodily harm. <u>See id.</u> at 658, 180 S.E. at 397 ("[T]here must be an overt act or attempt, or the unequivocal appearance of an attempt," to physically injure another; such conduct "directly invade[s]" one's "personal security" and "excite[s] terror of immediate personal harm." (quoting 2 <u>Ruling Case Law</u> § 9, at 533-34 (William M. McKinney & Burdett A. Rich, eds., 1914))). Appellant argues her conduct did not rise to this level, because it did not constitute "an unequivocal attempt to spit on anyone." She maintains this assertion is correct because none of the Commonwealth's witnesses observed any spittle. Further, while Greene and Boyle both initially testified that appellant spat at them, they and Strong also described appellant's conduct as "something *other than* spitting, *viz.*, a 'gesture' of spitting." Under these circumstances, appellant argues, the evidence no more supports her guilt than her innocence, because "it is equally likely that her gesture constituted an expression of derision or contempt as

it did a failed effort to spit." While the deputies may have been startled by appellant's gesture, such an unrepeated gesture could not arouse a reasonable fear of bodily harm.

Code § 18.2-57(C) provides, in pertinent part, that "if any person commits an assault . . . against another knowing or having reason to know that such another person is a . . . law-enforcement officer . . . , engaged in the performance of his public duties anywhere in the Commonwealth, such person is guilty of a Class 6 felony."[2] While this subsection establishes the penalty for assaulting a law enforcement officer, "because the elements of assault are not statutorily defined, [courts] must apply the common law definition." Clark v. Commonwealth, 279 Va. 636, 641, 691 S.E.2d 786, 788 (2010). "At common law, the term 'assault' originally had two distinct meanings, one when used in the context of criminal law and another when used in the context of torts law." Carter v. Commonwealth, 42 Va. App. 681, 686, 594 S.E.2d 284, 287 (2004) (en banc), aff'd, 269 Va. 44, 606 S.E.2d 839 (2005). "A criminal assault was 'an attempt to commit a battery.'" Id. (quoting Rollin M. Perkins, Perkins on Criminal Law 114 (2d ed. 1969)). "Under this definition of assault, it did not matter 'whether the victim was put in fear or was even aware of the assault.'" Id. (quoting Roger D. Groot, Criminal Offenses and Defenses in Virginia 48 (2004)). Instead, "[i]t mattered only that the accused had the specific intent and present ability to commit the battery and 'performed some direct, ineffectual act towards its commission.'" Id. By contrast, a tortious assault "was an overt, intentional act that placed another in reasonable apprehension of immediate bodily harm." Id. at 687, 594 S.E.2d at 287. Virginia, "[l]ike many jurisdictions, . . . has merged the common law crime with the common law tort of assault." Clark, 279 Va. at 641, 691 S.E.2d at 789. Thus, an unlawful assault now occurs where an individual either "engages in an overt act intended to inflict bodily

---

[2] Appellant does not challenge the sufficiency of the evidence that she knew or had reason to know Greene and Boyle were law enforcement officers engaged in the performance of their public duties within the Commonwealth, as required by Code § 18.2-57(C).

harm and has the present ability to inflict such harm *or* engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim." Id. (quoting Carter v. Commonwealth, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005)).

"In determining whether [a] trial court correctly ruled that [an appellant's] conduct constituted an assault, we are faced with a mixed question of law and fact." Carter, 42 Va. App. at 686, 594 S.E.2d at 287. Thus, "[w]e review the trial court's legal conclusions *de novo* while giving deference to the trial court's findings of fact unless the findings are 'plainly wrong or without evidence to support them.'" Id. (quoting Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998)).

We are not persuaded by appellant's arguments, and conclude that her actions were clearly sufficient to establish the elements of assault under the common law criminal definition of that offense—*i.e.*, she engaged in an overt act intended to inflict bodily harm and had the present ability to inflict such harm.

First, the evidence supports the trial court's finding that appellant made the gesture of spitting. Greene testified that appellant turned her head and spit, and also that she made a gesture as if she was spitting. Boyle testified that appellant spat towards himself and Deputy Greene and that her act "was a gesture of spitting on somebody." Strong also testified that she saw appellant's head turn toward the deputies and heard spitting towards the deputies, which sounded exactly like spitting. Although appellant denied trying to spit at the deputies, the trial court found that she had a "very selective" memory and that the Commonwealth's witnesses were credible and more believable. Determining the witnesses' credibility was within the exclusive province of the trial court, which had the unique opportunity to observe their demeanor as they testified, and we will not disturb a trial court's determination to credit a witness'

testimony unless that testimony was inherently incredible. Dalton v. Commonwealth, 64 Va. App. 512, 525-26, 769 S.E.2d 698, 705 (2015). Based upon the record before us, the trial court was not plainly wrong in crediting the Commonwealth's witnesses and finding that appellant made "the gesture" of spitting.

Contrary to appellant's argument, the evidence also supports the finding that her gesture was an attempt to spit on the deputies. Boyle testified that appellant spat "very forceful[ly]" at himself and Greene, who was standing a foot away from Boyle, producing "a very forceful blow of air right . . . between us." Greene was sufficiently concerned that he had been spat upon that he checked his uniform and a nearby wall for traces of spittle. Although Strong could not see appellant's face, she saw appellant turn her head toward the deputies and heard a spitting sound directed towards Boyle. Based upon this testimony, the trial court could properly have concluded that appellant's gesture of spitting was an overt, ineffectual act toward spitting upon the deputies.

With respect to whether that act was intended to inflict bodily harm, we first note that "[b]ecause direct proof of intent . . . is often impossible, it must be shown by circumstantial evidence." Scott v. Commonwealth, 55 Va. App. 166, 172, 684 S.E.2d 833, 837 (2009) (*en banc*) (quoting Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988)). Such circumstantial evidence of intent "may include the conduct and statements of the alleged offender." Adams v. Commonwealth, 33 Va. App. 463, 471, 534 S.E.2d 347, 351 (2000). Here, the evidence demonstrates that appellant was belligerent and violent during her interaction with the deputies. She cursed and directed racial slurs at them, kicked inside their patrol car with sufficient force to rock the vehicle, and threatened to punch Greene in the face. Appellant also kicked and head-butted a door in the sheriff's office and continued using obscenities as the deputies escorted her to a holding area. This aggressive and hostile behavior supports the finding

that appellant intended to inflict bodily harm on the deputies when she attempted to spit on them. This Court also has found that spitting on a police officer is a "bodily harm" sufficient to support an assault and battery conviction under Code § 18.2-57(C). See Gilbert v. Commonwealth, 45 Va. App. 67, 71-72, 608 S.E.2d 509, 511-12 (2005). Based on the evidence and this Court's precedent, there was sufficient evidence to conclude that appellant intended to inflict bodily harm on the deputies when she made the gesture of spitting on them.

We also consider the question of appellant's ability to inflict that harm. The evidence demonstrates that appellant, who was in close proximity to Greene and Boyle, was able to turn her head towards, direct her actions at, and blow very forcefully between the deputies. After her gesture of spitting, Boyle was concerned that appellant would repeat her behavior and thus attempt to spit on him again. The trial court could properly have concluded from this evidence that appellant's gesture of spitting was accomplished with the requisite ability to inflict harm.

Lastly, appellant argues that her overt acts were insufficient to establish the elements of assault because they could not have aroused in the deputies a reasonable fear of bodily harm. However, the instigation of such fear, which comports with the tort-based common law definition of assault, is not required to support an assault conviction. Our case law makes clear that an overt act will be sufficient if, as here, it comports with the alternative, traditional common law definition of criminal assault. See Clark, 279 Va. at 641, 691 S.E.2d at 789.

Because the trial court was not plainly wrong in finding that appellant made the "gesture of spitting" at the deputies, and because the evidence supports that her gesture was an overt act intended to inflict bodily harm, made with the present ability to inflict that harm, we conclude that appellant's conduct was sufficient to establish the elements of common law criminal assault. Thus, the trial court was not plainly wrong when it denied appellant's motion to strike and convicted her of that offense, in violation of Code § 18.2-57(C).

B. Sufficiency of the Evidence that Appellant's Acts Were Directed at Boyle

Appellant also argues the trial court erred when it denied her motion to strike and convicted her of the second count of assault, because she did not direct her actions at Deputy Boyle. Specifically, she contends that the evidence showed that appellant directed her overt act only toward Deputy Greene. This argument is without merit. Despite some confusion in the deputies' testimony about their actions as they escorted appellant to the holding area, Boyle stated unambiguously that appellant "turned around and spat towards *myself* and Deputy Greene." (Emphasis added). He described appellant's "forceful blow of air" as directed "right . . . between" himself and Greene, who was standing not more than a foot away from him. Boyle also agreed on cross-examination that he was afraid appellant would try to spit on him "again." Strong testified she was less than a foot behind Boyle when she saw appellant turn her head and "heard spitting towards [Boyle's] right shoulder." This evidence directly supports the conclusion that appellant directed her actions at both Boyle and Greene. Thus, the trial court was not plainly wrong in denying appellant's motion to strike and convicting her of the assault of Boyle.

### III. CONCLUSION

For the reasons stated above, we hold the trial court did not err in denying appellant's motion to strike and convicting her of two counts of assault of a law enforcement officer, because her overt acts were sufficient to establish the elements of assault and were directed at both officers. Accordingly, we affirm appellant's convictions.

Affirmed.