COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Elder, Humphreys, Kelsey, McClanahan, Haley, Petty,
Beales, Powell and Alston
Argued at Richmond, Virginia


GENEV DENISE CLARK, S/K/A
 GENEVA DENISE CLARK

                                                            OPINION BY
v.      Record No. 2656-07-2                        JUDGE LARRY G. ELDER
                                                            MAY 12, 2009
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Burnett Miller, III, Judge

        John W. Parsons for appellant.

        Benjamin H. Katz, Assistant Attorney General (William C. Mims,
        Acting Attorney General, on brief), for appellee.


        Genev Denise Clark (appellant) appeals from her bench trial conviction for assault in

violation of Code § 18.2-57.  On appeal, she contends the evidence was insufficient to support

her conviction because it failed to prove "an overt act or attempt to physically harm" the alleged

victim.  A panel of this Court agreed, holding by a vote of two to one that the evidence was

insufficient to prove the necessary overt act.  See Clark v. Commonwealth, No. 2656-07-2 (Va.

Ct. App. Dec. 23, 2008).  Pursuant to the Commonwealth's petition for a rehearing *en banc*, we

stayed the mandate of that decision and granted a rehearing *en banc*.  On rehearing *en banc*, we hold

the totality of the circumstances, viewed in the light most favorable to the Commonwealth,

establishes appellant committed an overt act sufficient to support her conviction for assault under

the tort law definition of that offense, as assimilated into Virginia's criminal law.[1]  Thus, we affirm appellant's conviction for assault in violation of Code § 18.2-57.

I.

BACKGROUND

Under settled principles, we recite the facts in the light most favorable to the Commonwealth, the party prevailing in the trial court, as required by our standard of review on appeal.  See, e.g., Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

As of Monday, May 7, 2007, Carolyn Coleman was a bus driver for students at Lakeside Elementary School in Henrico County.  Appellant was a food services employee at that school, and her children attended school there and rode Coleman's bus to and from school.  On that date, Coleman had "some type of problem [on the bus] with [appellant's] son," and, as a result, Coleman "ask[ed] the school administrators to not allow [appellant's] son to ride the bus for a period of time."  The principal called appellant that afternoon and told her that her son "[could not] ride the bus until Thursday when we had [a] school meeting with Ms. Coleman and her supervisor."

Around 7:00 a.m. the next day, Tuesday, May 8, 2007, Coleman arrived at the school in her bus to drop off her riders, but she had to wait for the school to open and for someone to come out to meet them.  Coleman drove into the bus circle to the location in front of the school where she was required to park to drop off the students.  The bus circle was "reserved exclusively for . . . buses . . . dropping [off] and picking up children," and "a lot" of signs so indicating were posted in the bus circle.  An employee parking lot was on the school grounds "about maybe 50 feet" from the bus circle.

---

[1] Clark has not challenged, either at trial or on appeal, the sufficiency of the evidence to prove any other element of the offense.  See infra note 5.

Coleman's bus was the first to arrive that morning, as it was every morning. When Coleman pulled her bus into the bus circle, she saw an automobile parked at the head of the circle; Coleman pulled in directly behind the car in order to "pull right up in front of the door" of the school as she was required to do. Other buses pulled into the bus circle behind her. Coleman testified without objection that the car "was parked to [block] her in so that she could not get out." Another bus driver, Susan Bernstein, confirmed that appellant's vehicle was "parked directly in front" of Coleman's bus. Bernstein testified that the way appellant parked both "block[ed]" in Coleman's bus and also "block[ed] all of us [bus drivers] from moving."[2]

Coleman saw appellant and her son, the student who had been temporarily banned from riding Coleman's bus, standing in the vicinity of the car. Coleman then opened her bus door to allow a student to get on the bus to wait because the school was not yet open. As Coleman did so, appellant approached the open bus door. While standing within "about . . . two feet of the bus," appellant said, "I told you I'm going to get you, bitch, don't care, I don't care where you at, if you're on the school ground, if you're in the school, or you're in the grocery store," "[I'm going to] [f]uck you up." Appellant had "her arms across . . . her chest[] and her lips pursed," and "[s]he was obviously unhappy." Coleman shut the door of her bus, called the north office,

---

[2] When the Commonwealth asked Bernstein, "[W]as there any way based on where [appellant's car] was that buses could come and go?," Bernstein responded that buses "could get around [appellant's car], yes, sir." Viewing all of Bernstein's and Coleman's testimony in the light most favorable to the Commonwealth, as required by our standard of review, the fact finder had at least two options with regard to Bernstein's testimony that the buses "could get around [appellant's car]." It could have concluded Bernstein's testimony that other buses could pass contradicted her testimony that the way appellant parked "block[ed] all of us [bus drivers] from moving." On this basis, the trial court was permitted to reject Bernstein's testimony that the buses "could get around [appellant's car]." Alternatively, the trial court could have reconciled these apparent conflicts, interpreting Bernstein's statement as meaning that the buses *in the curbside line* were blocked in because, like Coleman, they had parked almost bumper-to-bumper as required to discharge their passengers as close as possible to the school's front doors but that the bus lane nevertheless was wide enough to allow passage on the side of the bus line by any buses *not* blocked in so as to prevent forward motion.

- 3 -

and told them she needed a supervisor and a police officer. Coleman reported that appellant was "harassing her saying that she's going to pull her off the bus and beat her up." Appellant remained standing a few feet from the bus door cursing at Coleman until "[the] principal came up."

Around 4:20 p.m. that same day, Coleman again pulled her bus into the bus circle for "after school activity pick-up." When Coleman first pulled in, she did not see appellant, and she opened the bus door "so [she could] step off to go around the other side." Before Coleman could get off the bus, however, appellant again appeared outside her bus door and said, "Bitch, like I say, I'm going to get you." Coleman immediately closed her bus door and remained inside instead of exiting as she had planned. Appellant remained standing outside the bus.[3]

---

[3] The record contained conflicting evidence regarding how far Clark stood from the bus during the two encounters. Bernstein, who observed the morning incident, testified Clark stood within "about two feet of [Coleman's] bus." Coleman estimated in the trial court that the distance during the morning encounter was "[f]rom here to where this little thing is" and that the distance during the afternoon encounter was "[t]he same" as in the morning. The prosecutor thought the distance Coleman indicated was "approximately four or five feet," but the trial court said, "Well, let the record reflect it's about ten feet." In denying Clark's motion to strike the Commonwealth's evidence, the trial court recited the facts for the purpose of ruling on that motion as showing that, during the afternoon encounter, Clark "confront[ed] [Coleman] again *within* ten feet of her." (Emphasis added). Neither of these statements constituted a finding that the trial court accepted Coleman's testimony about distance in the morning incident over Bernstein's or that it found the distance during either incident was ten feet rather than two feet. In later convicting Clark of the charged offense, the trial court did not mention this distance.

Thus, the record indicates the trial court made no express finding regarding the distance Clark stood from the bus when she twice confronted Coleman, and the applicable standard of review on appeal requires us to view the evidence on this point in the light most favorable to the Commonwealth. The evidence, so viewed, indicated that distance during the morning confrontation was "about two feet," and Coleman testified Clark stood "[t]he same distance" from Coleman's bus in the afternoon as she had stood in the morning, supporting a finding that Clark stood "about two feet" from Coleman's bus during the afternoon, as well.

For these reasons, we do not accept the dissent's assertion that "the trial court found" Clark "never approached closer than ten feet from the bus." See infra at 17; cf. Clark v. Commonwealth, No. 2656-07-2, 2008 Va. App. Lexis 560, at *4 (2008) (acknowledging that "Clark stood approximately two feet from the bus" during the morning encounter).

- 4 -

Appellant was charged with assault, and at her trial for that offense, the Commonwealth offered evidence of these events in keeping with the above. At the close of the Commonwealth's evidence and again at the close of all the evidence, appellant moved to strike, contending her words alone were insufficient to constitute an assault. The Commonwealth responded that the evidence proved "much more than her words alone." It pointed to appellant's parking her vehicle, despite no parking signs, in a location calculated to block the bus; "[appellant's] physically coming toward the bus" and confronting Coleman; and appellant's "coming back" later the same day and again confronting Coleman "with the same language and the same threats." It argued that all of appellant's actions, viewed in their totality and in light of her threats, constituted the overt act necessary to prove assault.

The trial court convicted appellant for the charged offense, noting the "confrontation" and appellant's "[putting] her car in front of this bus where it's not supposed to be during the day. [Appellant] has confronted the bus driver twice with the language, which I would find from the evidence, can be considered a present threat."

Appellant noted this appeal.

## II.

## ANALYSIS

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to [the evidence] all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). The trier of fact is free to believe or disbelieve in part or in whole the testimony of any witness. E.g. Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).

Appellant was convicted for misdemeanor assault in violation of Code § 18.2-57. "Because [Code § 18.2-57] does not define assault, we [must] look to the common law definition of the term." Carter v. Commonwealth, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005). Virginia, like many jurisdictions, "has merged the common law crime and tort of assault so that today, a common law assault [punishable as a criminal offense] occurs when either set of elements is proved." Id. at 46, 606 S.E.2d at 841 (noting that this dual definition has been the law in Virginia since at least the Court's decision in Burgess v. Commonwealth, 136 Va. 697, 706-08, 118 S.E. 273, 275-76 (1923)); see Lamb v. State, 613 A.2d 402, 408, 409 (Md. Ct. App. 1992) (recognizing "'a majority of the jurisdictions'" have assimilated the tort theory into the crime of assault and opining that the assimilated part of the offense "mirrors the tort precisely in terms of its character and its necessary elements" (quoting Rollin M. Perkins & Ronald N. Boyce, Criminal Law 161-62 (3d ed. 1982))). An assault occurs under the traditional criminal definition "when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm." Carter, 269 Va. at 47, 606 S.E.2d at 841. An assault occurs under the merged tort law definition when an assailant "engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim." Id. As we elaborated in our *en banc* decision in Carter, "'a tortious injury may be committed by threats and menaces of bodily hurt, *through fear of which a man's business is interrupted*. A menace alone, without a consequent inconvenience, makes not the injury, but to complete the wrong there must be both of them together[— an overt act both intended to cause and actually causing a reasonable fear of bodily harm in the victim].'" Carter v. Commonwealth, 42 Va. App. 681, 687-88, 594 S.E.2d 284, 288 (2004) (en banc) (indicating that although this language originated in Blackstone's discussion of "private wrongs," he also incorporated it into his subsequent discussion of "public wrongs") (quoting 3 William Blackstone, Commentaries

- 6 -

*120 (emphasis added in <u>Carter</u>)), <u>aff'd</u>, 269 Va. 44, 606 S.E.2d 839 (2005). Under either definition, the bodily harm threatened need not be serious or deadly harm. <u>See id.</u> at 693-94, 594 S.E.2d at 291.

Our case law is clear that words *alone* are never sufficient to constitute an assault under either the traditional criminal definition of assault or the assimilated tort definition. <u>See, e.g.</u>, <u>Bennett v. Commonwealth</u>, 35 Va. App. 442, 449, 546 S.E.2d 209, 212 (2001) (decided under the criminal definition). However, "[w]ords are never spoken in a vacuum, and they cannot be utterly divorced from past conduct, or from the accompanying circumstances." <u>Restatement (Second) of Torts</u> § 31 cmt. d (1965). A defendant's words may be highly relevant under both definitions of assault to determining, for example, whether the defendant committed the required overt act with the necessary intent. <u>See, e.g.</u>, <u>Campbell v. Commonwealth</u>, 12 Va. App. 476, 484, 405 S.E.2d 1, 4 (1991) (en banc) (noting that intent may and often must be proved with circumstantial evidence, such as "the conduct and statements of the alleged offender"). Additionally, the defendant's words may be highly relevant under the tort law definition of assault to determining whether the "fear or apprehension in the victim" was "reasonable." <u>See</u> <u>Carter</u>, 269 Va. at 47, 606 S.E.2d at 841.

Although an overt act must be proved to support a conviction under either definition of assault, the intent with which the overt act must have been committed is different under the two definitions of assault. <u>Id.</u> Under the criminal definition of assault, the overt act must have been committed with the *actual* "*inten[t] to inflict bodily harm*" *and* the perpetrator must have a *present ability* to inflict such harm; under the tort law definition, by contrast, the overt act may be committed merely with the "inten[t] to place the victim in fear or apprehension of bodily harm" where the act "creates such reasonable fear or apprehension in the victim." <u>Id.</u> (emphasis added). Because, absent more direct evidence, the perpetrator's intent must be inferred from the

nature of the overt act and surrounding circumstances, the nature of the overt act sufficient to prove assault under the criminal definition often will be different from the nature of the overt act sufficient to prove assault under the tort law definition.[4] Cf. 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 16.3, at 569 (2d ed. 2003) (recognizing that, although both are crimes, the "intention to cause bodily harm" required to prove assault under the traditional criminal "attempted battery" definition is more culpable than the "intention to cause apprehension" required to prove assault under the assimilated tort definition); Restatement, supra, § 31 cmt. d, illus. 4 (opining that where A has made a previous threat to kill B, "B [later rounds a corner] and encounters A standing on the sidewalk," and A, "[w]ithout moving, . . . says to B, 'Your time has come[,]'" A may be held to have committed the tort of assault). Nevertheless, to prove assault under either definition, a sufficient causal nexus must exist among the elements of the offense—under the criminal definition, the perpetrator must commit the overt act with the intent to inflict bodily harm and have the present ability to inflict that harm; under the tort definition, the perpetrator must commit the overt act with the intent to place the victim in fear of bodily harm and the overt act must create reasonable fear in the victim.

Appellant compares the facts in Bennett v. Commonwealth, 35 Va. App. 442, 546 S.E.2d 209 (2001), in which we reversed a defendant's assault conviction, to those in her case and

---

[4] The Supreme Court has recognized the following overt acts may be sufficient under the criminal definition:

> "striking at [the victim] with a stick or other weapon, or without a weapon, though he be not struck, or even by raising up the arm or a cane in a menacing manner, by throwing a bottle of glass with an intent to strike, by leveling [sic] a gun at another within a distance from which, supposing it to be loaded, the contents might injure, or any similar act."

Harper v. Commonwealth, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955) (quoting J.A.G. Davis, Criminal Law 353-54 (1838)).

concludes the evidence here is more deficient than in <u>Bennett</u>, necessitating the reversal of appellant's assault conviction, as well.  <u>Bennett</u> is both factually and legally distinguishable, and the facts in appellant's case, viewed in the light most favorable to the Commonwealth, are sufficient to support her conviction for assault under the assimilated tort law definition of the crime.

In <u>Bennett</u>, the defendant was in his own home on the telephone when his fourteen-year-old daughter allowed two police officers looking for him to enter the home.  <u>Id.</u> at 446, 546 S.E.2d at 211.  Bennett told the officers to "'get out of the house.'"  <u>Id.</u>  When the officers began to explain they were present to investigate a complaint the man had made, he approached the officers from a distance of twenty feet, and when he was about two inches away, he repeated his order to them to get out of his house, yelled profanities, and made a conditional threat, stating that, "'*if* [the deputies] didn't leave, it would be an "F"ing blood bath.'"  <u>Id.</u> at 446-47, 546 S.E.2d at 211 (emphasis added).  The defendant then telephoned the state police and asked them to come remove the deputies.  <u>Id.</u> at 447, 546 S.E.2d at 211.  Although the deputies testified they felt threatened by Bennett's behavior and asked him to "'back off,'" Bennett was not armed, the deputies saw no weapons inside his house, and he did not raise his hands to the deputies or physically threaten them before they left.  <u>Id.</u>

In reversing the defendant's conviction in <u>Bennett</u>, which we did in a panel decision, we made no clear distinction between the criminal and tort law definitions of assault, and we analyzed the evidence only under the definition of assault requiring proof of an overt act "'accompanied with circumstances denoting an intention coupled with a present ability of using actual violence,'" language tracking the criminal definition.  <u>Id.</u> at 449, 546 S.E.2d at 212 (quoting <u>Harper v. Commonwealth</u>, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955)).  Further, although we did not specifically articulate it in our decision in <u>Bennett</u>, the evidence proved the

threat the defendant made was a conditional one–"*[I]f* [you don't] leave, it [will] be an 'F'ing blood bath." Id. at 446-47, 546 S.E.2d at 211 (emphasis added).  We noted "Bennett was not armed and made no threatening gestures with his hands" and that, "[a]lthough Bennett stood within inches of the officers, he made no overt act or attempt to physically harm either officer during the time the officers remained in his home after being asked to leave." Id. at 449-50, 546 S.E.2d at 212.  Bennett's only act after making the conditional verbal threat to cause a "blood bath" was to telephone the state police and ask them to come remove the deputies.  Thus, the circumstances failed to support a finding that Bennett had either an actual intention to batter or a present ability to do so in the fashion he had threatened.

In appellant's case, by contrast, the totality of the evidence, viewed in the light most favorable to the Commonwealth, supported a finding that appellant assaulted Coleman under the second definition of assault—the assimilated tort definition—by "engag[ing] in an overt act intended to place the victim in fear or apprehension of bodily harm and creat[ing] such reasonable fear or apprehension in the victim." See Carter, 269 Va. at 47, 606 S.E.2d at 841.  As the holding in Carter made clear, in order to prove this type of assault, the Commonwealth was not required to establish that appellant had a present ability or intention to inflict harm because the evidence established that appellant "act[ed] in a manner intended to put the victim in reasonable fear or apprehension and cause[d] the victim such reasonable fear or apprehension." Id. at 49, 606 S.E.2d at 842.

In appellant's case, victim Coleman did not approach appellant, the perpetrator of the assault, as originally occurred in Bennett when the officers entered Bennett's home; rather, Coleman was performing her job as a school bus driver when appellant approached her, and appellant did so on not one but two different occasions in the same day.  On the first occasion, the morning after Coleman took action that resulted in appellant's son's being suspended from

- 10 -

riding Coleman's school bus for a period of time, appellant parked her car in the bus circle at the school in such a manner that Coleman was forced to pull her bus up directly behind appellant's car. Appellant, a school employee as well as a parent, parked in this location despite the existence of both (i) prominently posted signs indicating cars were not allowed in the bus circle and (ii) an on-premises employee parking lot located about fifty feet away from the bus circle. Coleman, always the first bus driver to enter the circle in the morning, pulled up in the bus circle as far as she could, as her job duties required her to do, and one or more buses pulled in behind Coleman's bus. Due to the presence of appellant's car, Coleman was unable to move her bus out of the circle. Coleman testified without objection that appellant's car "was parked to [block] her in so that she could not get out." Fellow bus driver Susan Bernstein also testified that appellant parked "directly in front" of Coleman's bus, "blocking" both Coleman and "all of us [bus drivers] from moving." Thus, the totality of the circumstances, viewed in the light most favorable to the Commonwealth, established that appellant's actions blocked the only means by which Coleman might have escaped by bus.

When Coleman opened the door of her bus, the "obviously unhappy" appellant—with her arms "across . . . her chest" and "her lips pursed"—approached the open door and said, "I told you I'm going to get you, bitch, don't care, I don't care where you at, if you're on the school ground, if you're in the school, or you're in the grocery store," "[I'm going to] [f]uck you up." Coleman, reasonably fearing for her safety, immediately shut the door of her bus, phoned for a supervisor and a police officer, and reported that appellant was "harassing her saying that she's going to pull her off the bus and beat her up." Appellant stood only a few feet away from Coleman's closed bus door cursing at Coleman until "[the] principal came up." Thus, appellant also blocked Coleman's only reasonable means of escaping on foot.

Appellant ceased both her verbal harassment and her physical blockade of Coleman that morning when the principal arrived on the scene, but appellant renewed these actions later that same day. When Coleman pulled her bus into the bus circle again at about 4:30 p.m. that afternoon for "activity pick-up," appellant was not visible. However, as soon as Coleman opened the door to her bus, intending to disembark, appellant again appeared within a few feet of the bus door and said, "Bitch, like I say, I'm going to get you." No evidence indicated that appellant's children were with her at the time or that appellant was on school premises for any reason other than to renew her verbal and physical confrontation with Coleman, and the trial court specifically found appellant posed "a present threat" that afternoon, as distinguished from the conditional threat posed in <u>Bennett</u>. Coleman immediately closed her door instead of exiting the bus as she had planned, and appellant remained standing outside the bus.

The events of the morning and afternoon, viewed in their totality and specifically including appellant's physically blocking both Coleman's bus and Coleman herself from exiting the bus, indicated appellant's intent to make good on her threat. Because of appellant's reappearance that afternoon and Coleman's fear of appellant, Coleman hurriedly closed the door of her bus and remained inside. Appellant's reappearance and maintenance of a position outside Coleman's bus, just as Coleman was preparing to disembark, once again effectively blocked Coleman's exit from the bus. Appellant's direct physical blocking of Coleman's only reasonable means of escape, in combination with her earlier blocking of both Coleman's bus and her person and her renewed verbal attack—which the trial court expressly found posed "a present threat" rather than a conditional one—constituted an overt act that was "intended to place the victim in fear or apprehension of bodily harm" and that actually "create[d] such reasonable fear or

apprehension in the victim."[5]  Carter, 269 Va. at 47, 606 S.E.2d at 841; Restatement, supra, § 31

cmt. d ("Words are never spoken in a vacuum, and they cannot be utterly divorced from *past*

*conduct*, or from *the accompanying circumstances*." (emphases added)).  The totality of these

circumstances was sufficient to prove the necessary overt act under the assimilated tort law

definition.

---

[5] Appellant has not disputed, at trial or in this appeal, the sufficiency of the evidence to prove that she "created [a] reasonable fear or apprehension [of bodily harm] in the victim."  See Carter, 269 Va. at 47, 606 S.E.2d at 841.  Appellant argued at trial only that her words alone did not meet the overt act requirement and that she engaged in no intentional behavior sufficient to constitute such an act or prove an intent to inflict an assault or battery.

At oral argument on appeal, when asked whether Coleman was "in reasonable fear" of appellant, appellant's counsel responded, "I think the evidence was . . . that she was [in fear] or she wouldn't have closed the door [of the bus]."  Although counsel vigorously disputed whether appellant engaged in the requisite overt act causing Coleman's fear, counsel also conceded that "[appellant's] words alone certainly were said with the intent [to cause such fear], I can't dispute that."

In any event, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to prove that appellant's behavior, viewed in its totality as discussed in the text, constituted an overt act which was committed with the requisite intent and put Coleman in reasonable fear or apprehension of bodily harm.  Fear, like intent, is a state of mind which may be proved with circumstantial evidence such as the person's conduct and statements.  See Campbell, 12 Va. App. at 484, 405 S.E.2d at 4.  When appellant first confronted Coleman from a position about two feet away from Coleman's open bus door and began her verbal tirade, Coleman did not just ignore appellant.  Instead, she shut the door of her bus, called the office, and told them she needed not only a supervisor but a police officer, as well.  Coleman reported that appellant was "harassing her saying that she's going to pull her off the bus and beat her up."  At the time of the confrontation, Coleman's bus was blocked by appellant's car, and appellant herself blocked the bus' door.  Coleman remained inside the bus until the principal arrived.  During the afternoon incident, Coleman had been preparing to disembark from her unoccupied bus, but when appellant again appeared outside the door and renewed her verbal threats, which the trial court found constituted a present threat rather than a future one, appellant closed the door instead of exiting as she had planned, and appellant remained standing outside the bus.  These events provided sufficient circumstantial evidence that appellant's acts, in combination as discussed in the text, placed Coleman in fear of bodily harm and that such fear was reasonable under the circumstances.

- 13 -

III.

For these reasons, we hold the totality of the circumstances, viewed in the light most favorable to the Commonwealth, supported appellant's conviction for assault under the assimilated tort law definition, and we affirm that conviction.

<u>Affirmed.</u>

Humphreys, J., with whom Petty and Powell, JJ., join, dissenting.

I respectfully disagree with the majority that the evidence was sufficient to convict Clark of assault under Code § 18.2-57. In my view, the evidence was insufficient as a matter of law to show that Clark committed an overt act as required for the common law offense of assault. Therefore, I dissent from the analysis and judgment in this case.

My disagreement with the majority centers around the fundamental rule that "[w]ords alone [] do not constitute an assault." Bennett v. Commonwealth, 35 Va. App. 442, 449, 546 S.E.2d 209, 212 (2001). Although the majority pays lip service to that rule, I believe that its analysis effectively circumvents it and for all practical purposes, finds that words alone can now constitute the crime of assault, so long as those words cause a "reasonable fear or apprehension" or interrupt a person's "business." Indeed, the example given by the majority from the Restatement of Torts clearly suggests that words alone can constitute the tort of assault if they are threatening in nature and uttered on multiple occasions. The majority now makes it a crime as well.

As the majority notes, our Supreme Court has recognized the merger of "the crime and tort of common law assault." Carter v. Commonwealth, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005). In Carter, the Supreme Court explained the two separate types of assault:

> [C]ommon law assault, whether a crime or tort, occurs when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm *or* engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim.

Id. (emphasis in original). Although the other elements are different, both definitions of assault require that the assailant commit an overt act.

Under the tort definition of assault, the overt act must be one that is "*intended* to cause either harmful or offensive contact with another person or apprehension of such contact, *and* that

- 15 -

creates in that other person's mind a reasonable apprehension of an imminent battery." Koffman v. Garnett, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003) (citing Restatement (Second) of Torts § 21 (1965); Charles E. Friend, Personal Injury Law in Virginia § 6.3.1, at 226 (2d ed. 1998); Fowler V. Harper, et al., The Law of Torts § 3.5, at 3:18-:19 (3d ed. Cum. Supp. 2003)) (emphasis added). Traditionally, overt acts include

> "an attempt or offer, with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution; as by striking at him with a stick or other weapon, or without a weapon, though he be not struck, or even by raising up the arm or a cane in a menacing manner, by throwing a bottle of glass with an intent to strike, by leveling [sic] a gun at another within a distance from which, supposing it to be loaded, the contents might injure, or any similar act."

Harper v. Commonwealth, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955) (quoting J.A.G. Davis, Criminal Law 353-54 (1838)). Although it would be impossible to itemize all of the possible actions that can constitute an overt act in the context of an assault, the common law has continuously recognized one action that definitively will *not* support an assault: the speaking of words. "[W]ords and a 'threatening attitude' are not, by themselves, enough" to constitute an overt act. Carter v. Commonwealth, 42 Va. App. 681, 694, 594 S.E.2d 284, 291 (2004) (en banc), aff'd, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005).

If words are not enough to constitute an overt act, it would seem to follow that the act of approaching within earshot of the purported victim, or waiting for the purported victim to approach within earshot, in order to make the threatening words heard is equally insufficient to constitute an overt act. To hold otherwise, as the majority implicitly does, would render meaningless the principle that words, even when coupled with a threatening attitude, are insufficient to constitute an assault. Yet that is all the evidence established in this case. On the morning of the incident, Clark parked her car in a driveway that was empty at the time, although

- 16 -

it was reserved for school buses. Some time after that, while Clark was standing with her child outside of the locked school, Coleman pulled up in her bus and parked behind Clark's car. When Coleman arrived, Clark's car was not blocking the entire bus circle. Another bus driver specifically testified that the buses "could get around" Clark's car.[6] When Coleman opened the door to her bus, Clark approached her. Coleman testified, and the trial court confirmed, that Clark never approached closer than ten feet from the bus. Later that same day, Clark approached the bus again. Clark repeated her threats to Coleman and, again, did not come closer than ten feet.

The majority finds evidence sufficient to constitute an overt act for the crime of assault from the fact that Clark's car "blocked" Coleman's bus and that Clark waited for Coleman in a place Clark knew she would be in order to threaten her when she arrived.[7] However, there is no evidence that Clark parked her car with the specific intent to create fear and apprehension of bodily harm by blocking Coleman's bus. For an assault to occur, the overt act must be done with the specific intent to "cause either harmful or offensive contact with another person or apprehension of such contact." Koffman, 265 Va. at 16, 574 S.E.2d at 261. There is no evidence in the record before us that by parking her car in the bus circle or by waiting for

---

[6] Although Coleman's bus may have been blocked in once she parked behind Clark's car and the other buses then in turn parked behind Coleman, Clark's actions alone did not cause Coleman to be blocked in. At trial, the Commonwealth called another bus driver as a witness and asked her: "Was there any way based on where [Clark's car] was that buses could come and go?" The bus driver answered, "You could get around her, yes sir."

[7] It is unclear from the majority's opinion whether it holds that the purported assault occurred during Clark's confrontation with Coleman in the morning or the confrontation in the afternoon. Assault is not a continuing offense, and I am unaware of any precedent that would allow us to consider Clark's actions during the two separate incidents as one single assault as the majority does. If Clark's conduct constitutes an assault, she either committed two assaults, one in the morning and one in the afternoon, or she committed one assault *either* in the morning *or* the afternoon. However, I see no basis for holding, as the majority does, that Clark committed one assault that spanned two separate incidents.

Coleman's bus to arrive, Clark intended to cause apprehension of imminent bodily harm to Coleman.[8]

In addition, the majority ignores the fact that the record is devoid of any evidence whatsoever that Clark's *actions*, as opposed to her words, placed Coleman "in fear or apprehension of bodily harm," an element that is required to be proved to satisfy the tort definition of assault. Carter, 269 Va. at 47, 606 S.E.2d at 841. Coleman never testified that Clark's conduct caused such a state of mind. In fact, the Commonwealth presented no evidence whatsoever that Coleman *ever* feared or apprehended imminent bodily harm as a result of either confrontation with Clark. The Commonwealth could have simply asked Coleman about the effect of Clark's actions on her state of mind but failed to do so. Thus, the evidence proved only that Clark parked her car in a place that she knew Coleman would be and that she positioned herself in sufficient proximity to Coleman to convey her diatribe that Clark would "get her" or "f*** [her], up." While the fact finder is certainly permitted to draw reasonable inferences from the evidence presented, any such inference must inevitably flow from the evidence actually presented and not from sheer speculation. See, e.g., Commonwealth v. Barker, 275 Va. 529, 540, 659 S.E.2d 502, 507 (2008) ("evidence proving a causal connection must be 'sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference'" (quoting Cohn v. Knowledge Connections, Inc., 266 Va. 362, 369, 585 S.E.2d 578, 582 (2003) (other citations omitted))). Regardless of whether Coleman was actually afraid, there is no testimony or other evidence that Clark's *actions* placed Coleman in fear or

---

[8] Indeed, the examples of the type of conduct that historically constitute an overt act under either the criminal or tort definition of assault, such as those noted by our Supreme Court in Harper, have in common the fact that the action itself is unambiguously threatening of imminent bodily harm such as raising a fist, displaying a gun or other weapon, attempting to strike a blow, or hurling a missile. Parking a car, even if the result is to block an exit, carries no similar unambiguous threat of imminent harm.

apprehension of imminent bodily harm. In the absence of such evidence, any conclusion that

Clark's *actions* caused Coleman to apprehend imminent bodily harm from Clark cannot be the

result of a reasonable inference, but rather must be the result of speculation. In affirming Clark's

conviction, the majority has either engaged in such speculation or now implicitly holds that

Clark's words were sufficient as a matter of law to constitute an assault.[9]

Indeed, our decision in Bennett is a clear example of the principle that merely

approaching someone for the purpose of threatening them is not an overt act. In that case,

Bennett confronted two deputies. He "approached the deputies, from approximately twenty feet

away, until he was standing within inches of the two deputies." Id. at 446, 546 S.E.2d at 211.

Bennett stood there "shouting profanities and stating that 'if [the deputies] didn't leave, it would

be an "F"ing blood bath.'" Id. at 446-47, 546 S.E.2d at 211. Bennett "gestured with his hands

while speaking to the deputies, [but] he never raised his hands to them or physically threatened

them." Id. The deputies later testified that they felt "concerned" and "threatened." Id. This

Court reversed Bennett's conviction for assault, holding that he had not committed an overt act.

The Court reasoned that "[a]lthough Bennett stood within inches of the officers, he made no

overt act or attempt to physically harm either officer" and he "was not armed and made no

threatening gestures with his hands." Id. at 449, 546 S.E.2d at 212. If approaching to within

inches of someone and loudly proclaiming an imminent bloodbath is *not* an overt act, there is no

_____

[9] It is not difficult to imagine the sort of absurd results the majority's analysis could lead to. For example, after today, an inebriated bar patron who plants himself in the doorway and proudly announces that he will "whip every man in the place" will now have committed multiple assaults theoretically equal to the number of occupied bar stools, irrespective of whether any fist is actually raised. It seems to me that over the almost eight centuries of the evolution of the British common law, such a scenario has not previously been envisioned in any English, Irish, Welsh or Scottish pub, much less their courts.

logical reason for concluding that an expansion of the distance from inches to feet for the

purpose of shouting threats should change that result.[10]

Moreover, the majority claims that Clark committed an assault "'by threats and menaces

of bodily hurt, through fear of which [Coleman's] business [was] interrupted.'" Carter, 42

Va. App. at 687, 594 S.E.2d at 288 (quoting 3 William Blackstone, Commentaries *120).

However, it is unclear from the majority's opinion why it is relevant that Clark interrupted

Coleman's work. The only issue in this appeal is whether Clark's actions constituted an overt

act sufficient to create the state of mind sufficient to constitute an assault. Even under

Blackstone's description, the "threat or menace" and the interruption of one's business are

separate elements. "[T]o complete the wrong there must be both of them together." Blackstone,

supra at *120. The element at issue here is whether Clark's actions constituted a threat or

menace sufficient to constitute an assault. In Virginia, we require that such threats and menaces

be accompanied by an overt act. Whether the purported assailant interfered with the victim's

business is only relevant if the assailant did so by committing an overt act.

While Clark's conduct is reprehensible and worthy of condemnation and perhaps

prosecution under a more appropriate statute,[11] I conclude that it is insufficient as a matter of law

to constitute a common law assault. Clark did nothing more than wait for Coleman to arrive at

the school and stand outside her bus and shout epithets and threats. That Clark did so twice on

---

[10] The majority contends that Bennett is distinguishable because, in that case, "we made no clear distinction between the criminal and tort law definitions of assault," and "used language tracking the criminal definition." However, given that both definitions of assault require an overt act designed to create a particular state of mind, I believe that Bennett is illustrative nonetheless. It is a clear example that merely approaching someone for the purpose of threatening them, without some additional action, cannot be an overt act sufficient for common law assault.

[11] In fact, her actions were likely and more appropriately punishable by law under Code § 18.2-60, which makes it a crime to "communicate[] a threat . . . to kill or do bodily harm, [] on the grounds or premises of any elementary, middle or secondary school property," but the Commonwealth elected not to charge under this more specific statute.

the same day or that by doing so she interfered with Coleman's business does not transform those threats into an overt act sufficient to sustain a conviction for assault.

For these reasons, I would reverse the conviction, vacate the judgment below, and dismiss the warrant.